---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of  Delaware
                          (State)

Case number (if known): _____  Chapter  11

☐ Check if this is an
   amended filing

---

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy  04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Seventy Seven Energy Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | Chesapeake Oilfield Operating, L.L.C. |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 45 __ – 3338422 __ __ __ __ __ |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 777 N.W. 63rd Street | |
| Number      Street | Number      Street |
| | |
| | P.O. Box |
| Oklahoma City        OK      73118 | |
| City              State    ZIP Code | City              State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Oklahoma | |
| County | Number      Street |
| | |
| | City              State    ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website (URL)** | www.77nrg.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding  LLP)<br>☐ Other. Specify: _____ |

| Debtor | Seventy Seven Energy Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

2 1 3 1 1 1 __ __ __

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☒ A plan is being filed with this petition.

    ☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes. District _____ When ____/____/____ Case number _____
                                      MM / DD / YYYY

        District _____ When ____/____/____ Case number _____
                                      MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes. Debtor Please see schedule 1 attached hereto. Relationship _____

       District _____ When ____/____/____
                                      MM / DD / YYYY

       Case number, if known _____

| Debtor | Seventy Seven Energy Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
      Number      Street

_____

_____  _____  _____
City                             State     ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

      Contact name _____

      Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☒ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Debtor    Seventy Seven Energy Inc.
_____    Case number (if known) _____
          Name

**16. Estimated liabilities**

☐ $0-$50,000                ☐ $1,000,001-$10 million        ☐ $500,000,001-$1 billion
☐ $50,001-$100,000          ☐ $10,000,001-$50 million       ☒ $1,000,000,001-$10 billion
☐ $100,001-$500,000         ☐ $50,000,001-$100 million      ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million       ☐ $100,000,001-$500 million     ☐ More than $50 billion

---

### Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to
$500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

☒ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

☒ I have been authorized to file this petition on behalf of the debtor.

☒ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   6 / 7 / 2016
              MM / DD / YYYY

✗ _____        Cary Baetz
Signature of authorized representative of debtor        Printed name

Title   Chief Financial Officer

**18. Signature of attorney**

✗ _____   Date   6 / 7 / 2016
Signature of attorney for debtor                MM / DD / YYYY

Robert J. Dehney
Printed name

Morris, Nichols, Arsht & Tunnel LLP
Firm name

1201 N. Market Street, 16th Floor, PO Box 1347
Number     Street

Wilmington                              DE         19899-1347
City                                    State      ZIP Code

(302) 658-9200                          rdehney@mnat.com
Contact phone                           Email address

3578                                    DE
Bar number                              State

**EXHIBIT A TO VOLUNTARY PETITION**

1. The debtor's securities are registered under Section 12 of the Securities and Exchange Act of 1934, and the SEC file number is 001-36354.

2. The following financial data is the latest available information and refers to the debtor's condition on April 30, 2016, on a consolidated basis with its affiliated debtors and debtors in possession.

   a. Total assets:            $1,779,584,902[1]

   b. Total debts:             $1,725,555,944

   c. Debt securities held by more than 500 holders:    None

   d. Number of shares of common stock as of 4/30/16:    59,026,295

3. <u>Brief description of debtor's business</u>: Seventy Seven is a diversified oilfield services company providing a wide range of wellsite services and equipment to domestic land-based exploration and production customers. Its services include drilling, hydraulic fracturing and oilfield rentals. Seventy Seven has a marketed rig fleet of 92 all-electric drilling rigs and owns 13 hydraulic fracturing fleets and a diversified oilfield rentals business.

4. <u>List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of the debtor (as of June 6, 2016)</u>:

| Security Holder | Shares | % Amount Outstanding |
|---|---|---|
| Icahn Capital LP | 4,746,421 | 8.1% |
| BlackRock Inc. | 2,686,234 | 4.6% |

---

[1] This represents book value of the Debtors' assets. As set forth in the *Solicitation and Disclosure Statement for the Joint Prepackaged Plan of Reorganization for Seventy Seven Finance Inc. et al.*, filed on the date hereof, the Debtors have asserted that the going concern enterprise value falls within a range of approximately $700 million to $900 million.

**Schedule 1**

Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

As of the date hereof, each of the entities listed below (the "Debtors") filed a petition in this Court for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Seventy Seven Finance Inc.

1. Seventy Seven Finance Inc.

2. Seventy Seven Energy Inc.

3. Seventy Seven Operating LLC

4. Great Plains Oilfield Rental, L.L.C.

5. Seventy Seven Land Company LLC

6. Nomac Drilling, L.L.C.

7. Performance Technologies, L.L.C.

8. PTL Prop Solutions, L.L.C.

9. SSE Leasing LLC

10. Keystone Rock & Excavation, L.L.C.

11. Western Wisconsin Sand Company, LLC

EXECUTION VERSION

# SECRETARY'S CERTIFICATE

## SEVENTY SEVEN ENERGY INC.

### June 7, 2016

The undersigned duly elected, qualified and acting Senior Vice President, General Counsel and Secretary of Seventy Seven Energy Inc., an Oklahoma corporation (the "**Company**"), hereby delivers this Secretary's Certificate in connection with the filing of voluntary petitions for Chapter 11 relief by the Company and the Debtor Subsidiaries. Capitalized terms used herein, unless otherwise defined herein, shall have the meanings ascribed to such terms in the Resolutions (as defined below).

The undersigned hereby certifies as of the date hereof on behalf of the Company, solely in his official capacity as an officer of the Company and not in his individual capacity, that attached hereto as Exhibit A is a true, complete and correct copy of the resolutions adopted at a meeting of the Board of the Directors of the Company duly held on June 2, 2016 (the "**Resolutions**"), authorizing the Company and the Debtor Subsidiaries to, among other things, (i) execute and deliver the Restructuring Support Agreement, (ii) commence the solicitation of votes on the Prepackaged Plan, (iii) file the Chapter 11 Petition in Bankruptcy Court and (iv) engage certain professionals in connection with the Chapter 11 Case. The Resolutions have not been amended, modified, rescinded, revised, repealed, superseded or supplemented since the date of their adoption and are in in full force and effect as of the date hereof.

*[Signature page follows.]*

25831054

IN WITNESS WHEREOF, I have signed this Secretary's Certificate as of the date first above written.

By: _____

Name: David C. Treadwell
Title: Senior Vice President, General Counsel
and Secretary of each Company

## Exhibit A
## BOARD RESOLUTION

[See Attached]

## RESOLUTIONS FOR CONSIDERATION BY
## THE BOARD OF DIRECTORS

**Filing of Voluntary Petition for Chapter 11 Relief**

WHEREAS, the Board of Directors (the "Board") has reviewed and discussed the financial and operational condition of Seventy Seven Energy Inc. (the "Company") and the Company's business on the date hereof, including the current and historical performance of the Company, the assets and liquidity of the Company, the current and long-term liabilities of the Company, the market for the Company's services, and credit market conditions; and

WHEREAS, on April 14, 2016, the Board authorized the Company to enter into, and on April 15, 2016, the Company did enter into, a restructuring support agreement (as amended and amended and restated from time to time, the "Restructuring Support Agreement") and related term sheet (the "Term Sheet") with certain lenders under its $400 Million Term Loan Credit Agreement dated June 25, 2014 (the "Term Loan"), certain lenders under its Incremental Term  Supplement (Tranche A) loan (the "Incremental Term Loan"), certain holders of its 6.5% senior notes due 2019 (the "OpCo Notes") the outstanding principal amount of which is approximately $650 million, and certain holders of 6.75% senior notes due 2022 (the "HoldCo Notes") the outstanding principal amount of which is approximately $450 million (such lenders and holders, collectively, the "RSA Parties"); and

WHEREAS, the Restructuring Support Agreement and the Term Sheet contemplate certain restructuring transactions to be implemented through a pre-packaged plan of reorganization in bankruptcy, the terms of which are set forth in the Term Sheet; and

WHEREAS, pursuant to the Restructuring Support Agreement and the Term Sheet, on May 9, 2016, the Company commenced solicitation of votes on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Seventy Seven Finance Inc. and its Affiliated Debtors* (the "Prepackaged Plan") from the lenders under the Term Loan (the "Term Loan Lenders"), the lenders under the Incremental Term Loan (the "Incremental Term Loan Lenders"), the holders of the OpCo Notes (the "OpCo Noteholders") and the holders of the HoldCo Notes (the "HoldCo Noteholders") by causing the Prepackaged Plan and related *Solicitation and Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Seventy Seven Finance Inc. et al.* (the "Disclosure Statement") to be distributed to Term Loan Lenders, the Incremental Term Loan Lenders, the OpCo Noteholders and the HoldCo Noteholders; and

WHEREAS, the Board has received, reviewed, and discussed the recommendations of senior management of the Company and the Company's legal, financial, and other advisors as to the relative risks and benefits of the strategic alternatives available to the Company, including pursuing a bankruptcy proceeding under the provisions of Title 11 of the United States Code (the "Bankruptcy Code") and confirmation of the Prepackaged Plan; and

WHEREAS, after review and discussion and due consideration of all of the information presented to the Board, the Board deems it advisable and in the best interests of the Company, including, without limitation, its creditors, employees, stockholders and other investors, stakeholders and other interested parties, for the Company to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code and pursue confirmation of the Prepackaged Plan;

NOW, THEREFORE, BE IT RESOLVED, that the Board authorizes Jerry L. Winchester, Chief Executive Officer and President, Cary D. Baetz, Chief Financial Officer, David C. Treadwell, Senior Vice President, General Counsel and Secretary, and each Vice President or Secretary of the Company (the "Authorized Officers"), and each of them, in the name and on behalf of the Company, to: (i) execute and verify a voluntary petition for relief under chapter 11 of the Bankruptcy Code; and (ii) cause the same, including any amendments or supplements thereto, to be filed (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in such form and at such time as such Officer executing the petition shall determine; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to file with the Bankruptcy Court on behalf of the Company the Prepackaged Plan and Disclosure Statement and to take any and all further acts and deeds that the Authorized Officers deem necessary or proper to obtain confirmation of the Prepackaged Plan by the Bankruptcy Court; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to execute and file on behalf of the Company all petitions, schedules, lists, motions, applications, pleadings, and other papers or documents as necessary to commence the Chapter 11 Case and obtain relief under chapter 11 of the Bankruptcy Code, and to take any and all further acts and deeds that the Authorized Officers deem necessary or proper to obtain such relief, including, without limitation, any action necessary to facilitate the administration of the Chapter 11 Case; and further

RESOLVED, that all actions of the Authorized Officers and other officers and representatives of the Company heretofore taken in connection with the Restructuring Support Agreement, the Term Sheet, the Prepackaged Plan, the solicitation of votes from Senior Noteholders in accordance with the Disclosure Statement, and the Chapter 11 Case are in all respects authorized, approved, ratified and confirmed; and further

**Entry Into DIP Credit Facility and Related Actions**

WHEREAS, in connection with the Chapter 11 Cases, the Company, Seventy Seven Operating LLC ("SSO") and certain domestic subsidiaries of SSO desire to enter into a new Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"; capitalized terms used herein but not defined have the meaning ascribed to such terms in the Credit Agreement), by and among the Company, SSO, certain subsidiaries of SSO, each lender from time to time party thereto

(collectively, the "Lenders"), and Wells Fargo Bank, National Association, as administrative agent for such Lenders (as defined therein) (the "Agent");

WHEREAS, the Credit Agreement will provide for a debtor-in-possession senior secured asset-based revolving loan and letters of credit facility, pursuant to which revolving loans will be made by the Lenders to the borrowers under the Credit Agreement (the "Borrowers") and letters of credit will be issued to or for the account of the loan parties under the Credit Agreement in an aggregate principal amount (or face amount, as applicable) of up to $100,000,000 at any time outstanding (as may be extended, increased or otherwise modified from time to time, the "Credit Facility"), the proceeds of which will be used, among other things, (i) to pay costs, expenses and fees in connection with the Credit Facility and the transactions contemplated thereby and the Chapter 11 Cases and (ii) for working capital of the Loan Parties and other general corporate purposes.

WHEREAS, in connection with the Credit Agreement, the Company may, from time to time, be required to execute and deliver (i) if the Company becomes a Borrower, certain promissory notes payable to the Lenders that request promissory notes (collectively, the "Notes"), (ii) a security agreement (the "Security Agreement") which grants to the Agent for the benefit of the Lenders and certain other secured parties a security interest in and lien on certain personal property of the Company (including all or substantially all of its current assets), to secure, among other things, the payment and performance of the obligations of the Company and the other loan parties under the Credit Agreement and any other loan documents relating thereto, including the Notes and the Loan Documents (as defined below), and certain other obligations (collectively, the "Secured Obligations"), (iii) a guaranty agreement pursuant to which the Company will guarantee (the "Guaranty") the payment and performance of the Secured Obligations, (iv) certain control agreements and (v) certain other agreements, certificates, documents and instruments as may be executed and delivered in connection with the Credit Agreement (all such documents described in this recital being herein referred to collectively with the Credit Agreement as the "Loan Documents");

WHEREAS, the Board has been advised of the material terms of the Loan Documents and has determined that it is in the best interests of the Company to enter into the Credit Agreement and the other Loan Documents to which the Company is, or is to be, a party;

WHEREAS, the Board desires to authorize and approve the negotiation, execution and delivery by the Company of, and the performance of its obligations under, the Credit Agreement and the other Loan Documents to which the Company is, or is to be, a party; and

WHEREAS, the Board deems it advisable and in the best interests of the Company to authorize and empower the Authorized Signatories (as defined below), jointly or alone, in the name and on behalf of the Company, to negotiate, execute and deliver the Credit Agreement and the other Loan Documents to which the Company is, or is to be, a party to the Agent and/or the Lenders in the name of and on behalf of the

Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable;

NOW, THEREFORE, BE IT RESOLVED, that the Credit Facility and the execution and delivery by the Company of, and the performance of its obligations under, the Loan Documents to which the Company is, or is to be, a party (i) are in the best interests of the Company, (ii) are in furtherance of its proper purposes, (iii) will benefit the Company and (iv) are hereby approved and authorized in all respects; and be it further

RESOLVED, that the Company be, and hereby is, authorized and empowered to either (i) borrow revolving loans and swingline loans and obtain letters of credit from time to time under the Credit Agreement in an aggregate principal amount (or face amount, as applicable) of up to $100,000,000, (ii) issue Notes to the Lenders and/or (iii) provide the Guaranty; and be it further

RESOLVED, that the Board hereby authorizes and provides its consent to (i) the Company's grant to the Agent, for the benefit of the Lenders and the other secured parties, a security interest in and lien on certain of its now owned and future existing personal property to secure the Secured Obligations, including, without limitation, all or substantially all of its current assets, as described in the Loan Documents and (ii) the Company's potential assignment or other disposition to the Agent (or any successor, assignee or designee of the Agent) of any and all of such assets and properties upon the exercise of the Agent's remedies under the Guaranty, the Security Agreement and/or any and all instruments, agreements or documents executed in connection therewith; and be it further

RESOLVED, to the extent the Company is not a Borrower, that (i) the value of the consideration received and to be received by the Company in connection with the Credit Agreement is reasonably worth at least as much as the Company's liabilities and obligations under the Loan Documents to which the Company is, or is to be, a party, (ii) the execution and delivery by the Company of the Loan Documents to which the Company is, or is to be, a party and the Company's performance of its obligations thereunder may reasonably be expected to, and will, benefit, directly or indirectly, the Company and (iii) the Loan Documents to which the Company is, or is to be, a party are necessary and convenient to the conduct, promotion and attainment of the business of the Company; and be it further

RESOLVED, that each officer of the Company (each, an "Authorized Signatory"), is hereby authorized, empowered and directed, in the name and on behalf of the Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable, to negotiate and prepare the form, terms and provisions of, and to execute and deliver, for and on behalf of the Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable, the Loan Documents to which the Company is, or is to be, a party and any and all such other agreements, notices, letters, instruments, certificates, draw requests, letter of credit requests, letter of credit applications, consents, waivers,

releases, proxies, powers of attorney and other documents (whether of a like nature or not) that any Authorized Signatory deems necessary, appropriate or advisable to consummate the transactions contemplated by the Loan Documents (including, without limitation, supplemental or additional collateral documents encumbering personal property of the Company, including personal property acquired before or after the closing of the Credit Facility (together with the Loan Documents, the "Transaction Documents")), in such form as may be approved by any Authorized Signatory, and that the execution and delivery thereof by such Authorized Signatory shall be conclusive evidence of the approval thereof by such Authorized Signatory and by the Board; and be it further

RESOLVED, that each Authorized Signatory is hereby authorized, empowered and directed, in the name and on behalf of the Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable, to do and perform such further acts and things, including, without limitation, (i) the execution and delivery of any amendments, restatements, modifications, increases, extensions, renewals or supplements to the Loan Documents to which the Company is, or is to be, a party and any other Transaction Documents and (ii) the filing with any and all appropriate regulatory authorities, state and federal, in each case, as may be necessary or deemed appropriate by such Authorized Signatory in connection with the Loan Documents or any other Transaction Documents and the transactions contemplated thereby or which may be necessary or appropriate to comply with or evidence compliance with the terms, conditions and provisions of the Loan Documents or any other Transaction Documents as so executed, and that the performance or execution thereof by such Authorized Signatory shall be conclusive evidence of the approval thereof by such Authorized Signatory and by the Board; and be it further

RESOLVED, that each Authorized Signatory is hereby authorized, empowered and directed, in the name of and on behalf of the Company in its capacity as the sole member and manager of SSO, to adopt resolutions authorizing SSO to enter into and carry out the transactions contemplated by the Credit Agreement and the other Transaction Documents; and be it further

RESOLVED, that in accordance with the approvals and authority set forth in the preceding resolutions, the execution and delivery by any Authorized Signatory of the Loan Documents to which the Company is, or is to be, a party and any other Transaction Documents are each reasonably necessary and convenient to the conduct, promotion and attainment of the business of the Company and reasonably expected to benefit the Company and are approved, ratified and confirmed as the act and deed of the Company; and be it further

RESOLVED, that each Authorized Signatory is authorized, empowered and directed to cause the Company to perform its obligations under the Loan Documents to which the Company is, or is to be, a party and the other Transaction Documents in accordance with their respective terms; and be it further

RESOLVED, that the Company be, and hereby is, authorized to borrow, and each Authorized Signatory (together with such other officers and employees of the Company under their supervision as any of them shall direct) be, and each of them hereby is, authorized to request from the Agent and the Lenders, on behalf and as the act of the Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable, revolving loans, swingline loans and letters of credit under the Credit Agreement in such amounts as such Authorized Signatory or other such person shall deem necessary and desirable for the Company; and be it further

RESOLVED, that each Authorized Signatory (together with such other officers and employees of the Company under their supervision as any of them shall direct) be, and each of them hereby is, authorized to , on behalf and as the act of the Company, acting in its individual capacity and in its capacity as the borrowing agent (on behalf of the Borrowers), if applicable, from time to time and at such rates as such Authorized Signatory or other such person shall deem necessary and desirable for the Company, make interest rate elections accordance with the Credit Agreement; and be it further

RESOLVED, that the Authorized Signatories be and each of them hereby is authorized and empowered, for and on behalf of the Company, to take or cause to be taken any and all such actions and to enter into, execute and deliver, or cause to be entered into, executed and delivered, any and all such acknowledgments, agreements, certificates, contracts, instruments, notices, statements and other documents, or to effect any filings with any and all appropriate regulatory authorities, state, federal and foreign, as may be required or as any such Authorized Signatory may deem necessary, appropriate or advisable to effectuate and carry out the transactions contemplated by, and the purposes and intent of, the foregoing resolutions, all such actions to be performed in such manner and all such acknowledgments, agreements, certificates, contracts, instruments, notices, statements and documents to be executed and delivered in such form as the Authorized Signatory performing or executing the same shall approve, such Authorized Signatory's performance or execution and delivery thereof to be conclusive evidence of such approval and the approval of the Company; and be it further

RESOLVED, that the Secretary or any Assistant Secretary of the Company is hereby authorized, empowered and directed, for and on behalf of the Company, to certify and attest to these resolutions, and to deliver them to the parties whom he or she may deem necessary, advisable or appropriate, to consummate any transactions contemplated by the Loan Documents and any other Transaction Documents; and be it further

RESOLVED, that all acts and deeds previously performed by any person or entity prior to the date of these resolutions that, if the foregoing resolutions were then in effect, would have been within the authority conferred to any person or entity pursuant to such resolutions, including, without limitation, the execution and delivery of, and the performance of any obligations under, any commitment or engagement and fee letter or letters relating to the Credit Facility are hereby ratified, confirmed and approved as the authorized acts and deeds of the Company in all respects.

**Engagement of Chapter 11 Professionals**

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, the law firm of Baker Botts L.L.P. as general bankruptcy co-counsel to the Company in connection with the Chapter 11 Case and in other related matters on such terms and conditions as the Authorized Officers shall approve; and in connection therewith, the Authorized Officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers to, and cause to be filed an appropriate application for authority to retain the services of Baker Botts L.L.P.; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, the law firm of Morris Nichols Arsht & Tunnell LLP as general bankruptcy co-counsel to the Company in connection with the Chapter 11 Case and in other related matters on such terms and conditions as the Authorized Officers shall approve; and in connection therewith, the Authorized Officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers to, and cause to be filed an appropriate application for authority to retain the services of Morris Nichols Arsht & Tunnell LLP; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, Lazard Frères & Co. LLC as investment banker for the Company in connection with the Chapter 11 Case and in other related matters on such terms and conditions as the Authorized Officers shall approve; and in connection therewith, the Authorized Officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers to, and cause to be filed an appropriate application for authority to retain the services of Lazard Frères & Co. LLC; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, Alvarez & Marsal as restructuring advisor for the Company in connection with the Chapter 11 Case and in other related matters on such terms and conditions as the Authorized Officers shall approve; and in connection therewith, the Authorized Officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers to, and cause to be filed an appropriate application for authority to retain the services of Alvarez & Marsal; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, Prime Clerk as claims, noticing and balloting agent for the Company in connection with the Chapter 11 Case and in other related matters on such terms and conditions as the Authorized Officers shall approve; and in connection therewith, the Authorized Officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers to, and cause to be filed an appropriate application for authority to retain the services of Prime Clerk; and further

RESOLVED, that the Authorized Officers be, and each hereby is, authorized and empowered to employ, on behalf of the Company, such other counsel, financial advisors, and other professionals, as necessary or appropriate, in connection with the Chapter 11 Case on such terms and conditions as the Authorized Officers shall approve.

**Insurance**

WHEREAS, management of the Company has provided the Board with estimated terms and other information regarding D&O insurance coverage for the period during and after the Chapter 11 Case, and the Board has considered such information;

NOW, THEREFORE, BE IT RESOLVED, that the Board hereby approves, ratifies, and confirms in all respects the procurement by the Company of a six-year D&O tail insurance policy and the payment of all premiums relating thereto;

**General Authorizing Resolutions**

RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized and empowered, for and on behalf of the Company, to take or cause to be taken any and all such actions and to negotiate, enter into, execute and deliver any and all such agreements, amendments, certificates, contracts, instruments, security documents and mortgages, notices, statements, acknowledgments and other documents and filings, and to approve and effect any filings with any and all appropriate regulatory authorities and to pay such fees as may be required or as any of such officer may deem necessary or appropriate to carry out the transactions contemplated by, and the purposes and intent of, these resolutions; all such actions to be performed in such manner and all such agreements, amendments, certificates, contracts, instruments, security documents and mortgages, notices, statements, acknowledgments, documents and filings to be executed and delivered in such form as the officer performing or executing the same shall approve, such officer's performance or execution and delivery thereof to be conclusive evidence of such approval and the approval of the Board; and further

RESOLVED, that the Secretary and any Assistant Secretary of the Company be, and each of them hereby is, authorized and empowered, for and on behalf of the Company, to certify and attest and affix the seal of the Company to any documents that such Secretary or any such Assistant Secretary may deem necessary or appropriate to consummate the transactions contemplated by the documents heretofore authorized and approved, provided that such certification, attestation and seal shall not be required for the due authorization, execution and delivery or validity of the particular document; and further

RESOLVED, that all acts and deeds previously performed by any of the officers or representatives of the Company prior to the date hereof in furtherance of these resolutions be and each of them hereby is approved, ratified and confirmed in all respects as the authorized acts and deeds of the Company.

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor Name <u>SEVENTY SEVEN FINANCE INC., et al.</u>

United States Bankruptcy Court for the:  <u>District of Delaware</u>

Case number (if known): _____
</td><td>

· Check if this is an amended filing
</td></tr>
</table>

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Consolidated)                                                                12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE 2 NORTH LASALLE STREET SUITE 1020 CHICAGO IL 60602 | ATTN: CORPORATE TRUST DEPARTMENT PHONE: 312-827-8500 FAX: 312-827-8542 | Claim re: 6.625% Senior Notes Due 2019 | Unliquidated | | | $650,000,000.00 |
| 2 WELLS FARGO BANK, NATIONAL ASSOCIATION AS INDENTURE TRUSTEE 710 N. SAINT PAUL PLACE SUITE 1750 DALLAS TX 75201 | ATTN: PATRICK GIORDANO FAX: 214-756-7401 | Claim re: 6.50% Senior Notes Due 2022 | Unliquidated | | | $450,000,000.00 |
| 3 NALCO COMPANY 1601 W. DIEHL ROAD NAPERVILLE IL 60563-1198 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 630-305-1000 FAX: 630-305-2900 | Trade Payable | | | | $10,778,541.56 |
| 4 NATIONAL OILWELL VARCO US RIG 7909 PARKWOOD CIRCLE DR. HOUSTON TX 77036 | ATTN: CRAIG L. WEINSTOCK, SVP, GENERAL COUNSEL PHONE: 713-375-3700 FAX: 713-375-3994 | Trade Payable | | | | $3,062,496.10 |
| 5 SIMONS PETROLEUM LLC 210 PARK AVE SUITE 1800 OKLAHOMA CITY OK 73102 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 405-848-3500 FAX: 405-848-3508 EMAIL: COLLECTIONS@PILOTTHOMAS.COM | Trade Payable | | | | $3,005,942.92 |
| 6 WOOLSLAYER COMPANIES INC 5416 S YALE AVENUE SUITE 500 TULSA OK 74135 | ATTN: THOMAS L. WINGERTER, PRESIDENT/CEO PHONE: 918-523-9191 FAX: 918-523-0854 EMAIL: SALES@LCM-WCI.COM | Trade Payable | | | | $1,037,151.85 |

Debtor    SEVENTY SEVEN FINANCE INC.    Case number (if known) _____
Name

| Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| 7 SUPERIOR SILICA SANDS LLC 6000 WESTERN PLACE SUITE 465 FORT WORTH TX 76107 | ATTN: RICK SHEARER, CHIEF EXECUTIVE OFFICER PHONE: 817-841-8070 FAX: 888-446-5677 EMAIL: INFO@SSSAND.COM | Trade Payable | | | | | $993,764.98 |
| 8 VALLOUREC DRILLING PRODUCTS US 6300 NAVIGATION BLVD. HOUSTON TX 77011 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 713-844-3700 FAX: 713-926-7103 EMAIL: SALES.DRILLING-PRODUCTS.NA@VALLOUREC.COM | Trade Payable | | | | | $822,201.03 |
| 9 VALTEK INDUSTRIES INC 2120 WEST 44TH STREET ODESSA TX 79764 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 432-339-8481 FAX: 866-467-4427 | Trade Payable | | | | | $692,187.20 |
| 10 ALTA RIG SYSTEMS INC 9141-35 AVE EDMONTON AB T6E 5Y1 CANADA | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 780-440-6630 FAX: 780-440-6631 EMAIL: INFO@ALTARIG.COM | Trade Payable | | | | | $637,817.00 |
| 11 FAIRMOUNT SANTROL 3 SUGAR CREEK CENTER BLVD SUITE 550 SUGAR LAND TX 77478 | ATTN: DON BETZOLD PHONE: 713-234-5450 EMAIL: TECHNOLOGY@FAIRMOUNTSANTROL.COM | Trade Payable | | | | | $610,950.32 |
| 12 KALYN SIEBERT 1505 WEST MAIN STREET GATESVILLE TX 76528 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 254-248-3334 FAX: 254-865-7234 EMAIL: KS_SALES_INQUIRY@KALYNTX.COM | Trade Payable | | | | | $475,996.41 |
| 13 KEMPER VALVE & FITTINGS CORPORATION 3001 DARRELL ROAD ISLAND LAKE IL 60042 | ATTN: JOE KEMPER, PRESIDENT/CEO PHONE: 847-526-2166 FAX: 847-526-2241 EMAIL: INVOICING@KEMPERVALVE.COM | Trade Payable | | | | | $415,146.66 |
| 14 DEALERS ELECTRICAL SUPPLY 2320 COLUMBUS AVE WACO TX 76701 | ATTN: SCOTT BRACEY, PRESIDENT PHONE: 254-756-7251 FAX: 254-756-0133 EMAIL: NEWBERG@DEALERSELECTRICAL.COM | Trade Payable | | | | | $414,770.72 |
| 15 TILLEY PRESSURE TEST INC 5201 N HWY 81 DUNCAN OK 73533 | ATTN: BRIAN STEWART, CHIEF OPERATING OFFICER PHONE: 580-470-9492 FAX: 580-470-8378 EMAIL: BRIAN@GOTILLEY.COM | Trade Payable | | | | | $385,335.86 |
| 16 HORN EQUIPMENT CO INC 131 N. SUNNYLANE ROAD PO BOX 6145 MOORE OK 73153 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 405-793-9101 FAX: 405-799-8735 EMAIL: REP@HORNEQUIP.COM | Trade Payable | | | | | $344,288.73 |
| 17 U S SILICA COMPANY 8490 PROGRESS DR, SUITE 300 FREDERICK MD 21701 | ATTN: CHRISTINE MARSHALL, GENERAL COUNSEL PHONE: 301-682-0304 FAX: 301-682-0691 EMAIL: COMMUNICATIONS@USSILICA.COM | Trade Payable | | | | | $306,777.97 |
| 18 TRINITY INDUSTRIES LEASING CO 2525 STEMMONS FREEWAY DALLAS TX 75207 | ATTN: S. THEIS RICE, SVP, CHIEF LEGAL OFFICER PHONE: 214-631-4420 FAX: 214-589-8810 EMAIL: THEIS.RICE@TRIN.NET | Trade Payable | | | | | $306,689.00 |

Debtor    <u>SEVENTY SEVEN FINANCE INC.</u>          Case number (if known) _____
          Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| 19 | DNOW LP 7402 N ELDRIDGE PKWY HOUSTON TX 77401-1902 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 281-823-4700 FAX: 713-237-3300 EMAIL: AP@DNOW.COM | Trade Payable | | | | $260,706.80 |
| 20 | CAPGEMINI US LLC 623 FIFTH AVENUE 33RD FLOOR NEW YORK NY 10022 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 212-314-8000 FAX: 212-314-8001 | Trade Payable | | | | $259,812.00 |
| 21 | QUALITY INDUSTRIAL CONSTRUCTION 1568 HAYNESVILLE HIGHWAY EL DORADO AR 71730 | ATTN: MARK DISON, OWNER PHONE: 870-862-7211 FAX: 318-986-4702 | Trade Payable | | | | $225,173.82 |
| 22 | ELWOOD STAFFING SERVICES INC 4111 CENTRAL AVENUE COLUMBUS IN 47203 | ATTN: JOHN MORRISON, SVP & LEGAL COUNSEL PHONE: 812-372-6200 FAX: 812-348-6201 EMAIL: INFO@ELWOODSTAFFING.COM | Trade Payable | | | | $224,096.52 |
| 23 | DFW HEAVY DUTY PARTS 728 111TH STREET ARLINGTON TX 76011 | ATTN: MICHIE WHITE, PRESIDENT; BEN ALLEN, CHIEF OPERATING OFFICER PHONE: 817-704-7346 EMAIL: MWHITE@DFWHD.COM; BALLEN@DFWHD.COM; JHARPER@DFWHD.COM | Trade Payable | | | | $223,887.32 |
| 24 | J-MAC TOOL INC 8701 EAGLE MOUNTAIN CIR FORT WORTH TX 76135 | ATTN: JACK COLEMAN, OWNER; JANET COLEMAN, FINANCE PHONE: 817-237-6309 FAX: 817-238-9275 EMAIL: JACK.SRZ@JMACTOOL.COM; JANET@JMACTOOL.COM | Trade Payable | | | | $223,651.15 |
| 25 | UNIVAR USA INC 3075 HIGHLAND PKWY #200 DOWNERS GROVE IL 60515 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 331-777-6000 FAX: 331-777-6291 | Trade Payable | | | | $217,231.40 |
| 26 | ABERDEEN DYNAMICS 17717 E. ADMIRAL PLACE TULSA OK 74158 | ATTN: JOE MARTIN, PRESIDENT PHONE: 918-437-8000 FAX: 918-437-8420 EMAIL: SALES@ABERDEENDYNAMICS.COM; SUPPORT@ABERDEENDYNAMICS.COM | Trade Payable | | | | $198,640.00 |
| 27 | ERNST AND YOUNG LLP 5 TIMES SQUARE 14TH FLOOR NEW YORK NY 10036-6530 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 212-773-3000 FAX: 212-773-6350 EMAIL: | Trade Payable | | | | $194,216.00 |
| 28 | WATCO COMPANIES LLC 315 WEST 3RD STREET PITTSBURG KS 66762 | ATTN: CRAIG RICHEY, EVP, GENERAL COUNSEL PHONE: 620-231-2230 FAX: 620-231-0812 EMAIL: CRICHEY@WATCOCOMPANIES.COM; AR@WATCOCOMPANIES.COM | Trade Payable | | | | $180,154.34 |
| 29 | HOLT CAT LTD 3302 S W.W. WHITE RD SAN ANTONIO TX 78222 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 210-648-1111 FAX: 210-648-8499 | Trade Payable | | | | $179,123.45 |
| 30 | WARREN CAT 10325 YOUNGER RD MIDLAND TX 79706 | ATTN: PRESIDENT/GENERAL COUNSEL PHONE: 432-334-0700 FAX: 432-563-1871 | Trade Payable | | | | $178,013.32 |

Fill in this information to identify the case and this filing:

Debtor Name  Seventy Seven Finance Inc., et al.

United States Bankruptcy Court for the: _____  District of  Delaware
                                                                          (State)

Case number (if known): _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors        12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

❑  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

❑  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

❑  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

❑  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

❑  *Schedule H: Codebtors* (Official Form 206H)

❑  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

❑  *Amended Schedule* _____

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

❑  Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  6/7/2016              ✗ _____
             MM / DD / YYYY                   Signature of individual signing on behalf of debtor

                                 Cary Baetz
                                 Printed name

                                 Chief Financial Officer
                                 Position or relationship to debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEVENTY SEVEN FINANCE INC., *et al.*,[1] | ) | Case No. 16-_____ (___) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## CORPORATE OWNERSHIP STATEMENT
## <u>PURSUANT TO FED. R. BANKR. P. 1007(a)(1)</u>

Pursuant to Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure, Seventy Seven Energy Inc., Seventy Seven Finance Inc., Seventy Seven Operating LLC, Great Plains Oilfield Rental, L.L.C., Seventy Seven Land Company LLC, Nomac Drilling, L.L.C., Performance Technologies, L.L.C., PTL Prop Solutions, L.L.C., SSE Leasing LLC, Keystone Rock & Excavation, L.L.C. and Western Wisconsin Sand Company, LLC (collectively, the "<u>Debtors</u>"), respectfully represent:

1. To the best of the Debtors' knowledge and belief based on publicly filed disclosures, there are no corporations or other entities that directly or indirectly own more than 10% of Seventy Seven Energy Inc.'s equity.

2. 100% of Seventy Seven Operating LLC's equity is directly owned by Seventy Seven Energy Inc.

3. 100% of Seventy Seven Land Company LLC's equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Seventy Seven Energy Inc. (8422); Seventy Seven Finance Inc. (3836); Seventy Seven Operating LLC (8399); Great Plains Oilfield Rental, L.L.C. (4318); Seventy Seven Land Company LLC (4346); Nomac Drilling, L.L.C. (9548); Performance Technologies, L.L.C. (5813); PTL Prop Solutions, L.L.C. (2147); SSE Leasing LLC (5764); Keystone Rock & Excavation, L.L.C. (8771); Western Wisconsin Sand Company, LLC (4510).  The Debtors' mailing address is 777 NW 63rd Street, Oklahoma City, Oklahoma 73116.

4. 100% of Seventy Seven Finance's equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

5. 100% of Performance Technologies, L.L.C.'s equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

6. 100% of PTL Prop Solutions, L.L.C.'s equity is directly owned by Performance Technologies, L.L.C. and indirectly owned by Seventy Seven Operating LLC and Seventy Seven Energy Inc.

7. 100% of Western Wisconsin Sand Company, LLC's equity is directly owned by PTL Prop Solutions, L.L.C. and indirectly owned by Performance Technologies, L.L.C., Seventy Seven Operating LLC and Seventy Seven Energy Inc.

8. 100% of Nomac Drilling, L.L.C.'s equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

9. 100% of SSE Leasing LLC's equity is directly owned by Nomac Drilling, L.L.C. and indirectly owned by Seventy Seven Operating LLC and Seventy Seven Energy Inc.

10. 100% of Great Plains Oilfield Rental, L.L.C.'s equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

11. 100% of Keystone Rock & Excavation, L.L.C.'s equity is directly owned by Seventy Seven Operating LLC and indirectly owned by Seventy Seven Energy Inc.

*[declaration follows]*

Fill in this information to identify the case and this filing:

Debtor Name   Seventy Seven Energy Inc.

United States Bankruptcy Court for the: _____   District of Delaware
                                                                          (State)

Case number (if known): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration  Corporate Ownership Statement  _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   8/7/2016          ✗ _____
              MM / DD / YYYY                        Signature of individual signing on behalf of debtor

                                          Cary Baetz
                                          Printed name

                                          Chief Financial Officer
                                          Position or relationship to debtor